[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Price*, Slip Opinion No. 2020-Ohio-4926.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4926

THE STATE OF OHIO, APPELLEE, *v.* PRICE, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Price*, Slip Opinion No. 2020-Ohio-4926.]**

*Criminal law—R.C. 2925.02(A)(3)—Corrupting another with drugs—Causation-element jury instructions—But-for causation—Independently sufficient causation—Contributing-factor causation—Trial court did not abuse its discretion in instructing jury on causation.*

(Nos. 2019-0729 and 2019-0822—Submitted June 16, 2020—Decided October 20, 2020.)

CERTIFIED by and APPEAL from the Court of Appeals for Cuyahoga County, No. 107096, 2019-Ohio-1642.

_____

**KENNEDY, J.**

{¶ 1} In this discretionary appeal from the Eighth District Court of Appeals, which also certified a conflict between its judgment and a judgment of the Fifth District Court of Appeals, we consider whether a trial court, when instructing a jury

on the causation element of the offense of corrupting another with drugs, is required to inform the jury that it must find not only that the accused's conduct was the "but-for" cause of serious physical harm to the victim—i.e., that without the accused's conduct, the injury would not have occurred—but also that it was an "independently sufficient cause" of that harm.

{¶ 2} Appellant, Mark Price, relies on the United States Supreme Court's decision in *Burrage v. United States*, 571 U.S. 204, 218-219, 134 S.Ct. 881, 187 L.Ed.2d 715 (2014), for the proposition that a jury instruction on the causation element must instruct on both but-for causation and independent sufficiency. But Price did not request this specific instruction. Instead, he asked the trial court to instruct the jury that he could not be convicted of corrupting another with drugs unless the jury found that his conduct was the but-for cause of the victim's serious physical injury or, alternatively, an independently sufficient cause of that harm. The trial court gave the jury the essence of the instruction that he requested. Price did not object to its language, and the court of appeals properly held that he has not established that the trial court abused its discretion in giving the instruction that it did.

{¶ 3} Turning to the certified-conflict question, we conclude that there is no conflict. Although the Eighth District in dicta criticized the Fifth District's reasoning in the certified-conflict case, the Eighth District's actual holding in this case that there was no abuse of discretion in instructing the jury is not in conflict with the Fifth District's holding that the offense of corrupting another with drugs requires proof of but-for causation.

{¶ 4} Therefore, we address the proposition of law raised in case No. 2019-0822 and affirm the judgment of the court of appeals, and we dismiss case No. 2019-0729 as improvidently certified.

**Facts and Procedural History**

{¶ 5} In the early morning hours of August 1, 2016, James Dawson contacted his neighbor, Tierra Fort, and the two then exchanged a series of text messages regarding Dawson's attempt to find someone to sell him heroin. Acting as an intermediary in exchange for a share of the drugs, Fort contacted Price and asked him to sell a gram of heroin to Dawson for $100. Price delivered the drugs in a baggie to Fort's apartment at around 3:00 a.m., and Fort gave him the money that had been supplied by Dawson. Dawson came to Fort's apartment, picked up the drugs, and left after giving Fort approximately $20 worth of them.

{¶ 6} Dawson was found dead in his apartment of an apparent overdose around 10:40 a.m. the next day, August 2, 2016. A Lakewood police officer who responded to a 9-1-1 call observed a "pinkish-powder residue" and a "straw" (the hollow tube of an ink pen) on the kitchen table. There were also six pills on the floor near Dawson's body as well as prescription bottles in the apartment. Detective Amelio Leanza searched Dawson's cellphone and discovered the text messages Dawson had exchanged with Fort. That same day, he obtained a warrant for Fort's arrest and a warrant to search her apartment. He executed both warrants and seized Fort's cellphone, drug paraphernalia, and a rock of heroin, as well as a credit card coated with a powder that was similar in appearance to the powder found on Dawson's kitchen table.

{¶ 7} Detective Leanza interviewed Fort and learned that someone with the street name "Bam," who was a contact on Fort's cellphone, had supplied the drugs. He searched Facebook using Bam's cellphone number, and Fort identified Price from a picture on Facebook. Detective Leanza had Fort call Price to arrange a controlled purchase of drugs, and she confirmed that Price was the passenger in a blue Chrysler 200 when he arrived at the agreed-upon location, the Greater Cleveland Regional Transit Authority station at 117th Street and Madison Avenue. Officers arrested Price, and while Detective Leanza was placing Price in a police

cruiser, he saw Price go limp and realized that Price had consumed the drugs. Detective Leanza administered Narcan to counteract an overdose. When paramedics arrived to treat Price, they discovered a baggie containing a pinkish-tan substance in his mouth. He was transported to a hospital for observation for a time and later to jail.

{¶ 8} Tests of the pinkish powder found in Dawson's and Fort's apartments, on the credit card used to cut it, and in the straw showed that they contained heroin and fentanyl.

{¶ 9} The Cuyahoga County Grand jury returned a 22-count indictment alleging that Price committed 1 count of involuntary manslaughter, 2 counts of corrupting another with drugs, 11 counts of trafficking, 6 counts of drug possession, 1 count of tampering with evidence, and 1 count of possessing criminal tools in addition to various specifications.

{¶ 10} Joseph Felo, D.O., chief deputy medical examiner and forensic pathologist for the Cuyahoga County Medical Examiner's Office, performed an autopsy on Dawson's corpse and testified at trial that he initially thought that heart and lung disease could have caused Dawson's death. However, a toxicological evaluation identified a high level of fentanyl—which he called "a potent narcotic medication" and which was not one of Dawson's prescribed medications—and two prescription antidepressants, mirtazapine and escitalopram, in Dawson's system. Dr. Felo described respiratory depression (in which the body slows down breathing and the lungs "essentially stop") as a side-effect of fentanyl that could manifest itself in the physical changes he had observed in Dawson's organs, particularly his lungs. He determined the cause of Dawson's death to be acute intoxication by the combined effects of escitalopram, fentanyl, and mirtazapine—with fentanyl "the primary cause" and the antidepressants having "a very small role" in the respiratory depression that killed Dawson.

**{¶ 11}** The defense presented the testimony of Robert J. Belloto Jr., Ph.D., as an expert in pharmacology and toxicology. Dr. Belloto explained that because the heroin in Dawson's system had metabolized and the level of fentanyl in a person's blood system can increase after death, it was his opinion that Dawson had lived for up to five hours after taking a dose of heroin and fentanyl. Dr. Belloto opined that Dawson had not died of an acute overdose from the powder containing heroin and fentanyl, although he admitted that a pure dose of fentanyl could also explain the level detected in Dawson's blood. Dr. Belloto believed that a heart disorder likely caused Dawson's death.

**{¶ 12}** After the defense rested, defense counsel requested a jury instruction drawn from the United States Supreme Court's decision in *Burrage*, 571 U.S. 204, 134 S.Ct. 881, 187 L.Ed.2d 715. As articulated by defense counsel, the requested instruction was, "Where the drug distributed by the Defendant—this is the holding of [*Burrage*]—is not an independently sufficient cause of the victim's death or serious bodily injury, a Defendant cannot be responsible unless such use was the but-for cause of death or injury." According to defense counsel, "It's about causation. [*Burrage*'s] subject matter deals with the federal statute that deals with heroin and overdoses, but the issue in the case is causation."

**{¶ 13}** The trial court denied Price's request for this specific instruction and instead instructed the jury on causation as follows:

> Cause. The State charges that the act or failure to act of the Defendant caused the death of James Dawson. Cause is an essential element of the offense. Cause is an act or failure to act which in a natural and continuous sequence directly produces the death of a person, and without which, it would not have occurred.
>
> Natural consequences. The Defendant's responsibility is not limited to the immediate or most obvious result of the Defendant's

act or failure to act. The Defendant is also responsible for the natural and foreseeable consequences or results that follow in the ordinary course of events from the act or failure to act.

Other causes not a defense. There may be one or more causes of an event, however, if a Defendant's act or failure to act was one cause, then the existence of another cause is not a defense.

Intervening causes. The Defendant is responsible for the natural consequences of the Defendant's unlawful act or failure to act even though the death of a person was also caused by the intervening act or failure to act of another person or agency.

Independent intervening cause of death. If the Defendant inflicted an injury not likely to produce death, and if the sole and only cause of death was natural cause or fatal injury inflicted by another person, the Defendant who inflicted the original injury is not responsible for the death.

Causation. Conduct is the cause of a result if it is an event, but for which the result in question would not have occurred.

Price did not specifically object to this language.

{¶ 14} The jury acquitted Price of involuntary manslaughter but found him guilty of the remaining counts and specifications. The trial court merged some counts as allied offenses of similar import, and it sentenced Price to an 8-year term in prison for corrupting another with heroin, served consecutively to an 8-year term for corrupting another with fentanyl and concurrently with terms of 12 months for heroin tracking, 6 months for a second count of heroin trafficking, 12 months for fentanyl trafficking, 12 months for a second count of fentanyl trafficking, 12 months for tampering with evidence, and 6 months for possessing criminal tools. In all, the trial court imposed an aggregate sentence of 16 years in prison.

{¶ 15} The Eighth District Court of Appeals affirmed in part and reversed in part. It rejected arguments that the convictions were not supported by sufficient evidence and were against the manifest weight of the evidence and that the trial court deprived Price of the opportunity to present exculpatory evidence. And relevant here, the appellate court concluded that the trial court had not abused its discretion in denying Price's request for the instruction drawn from *Burrage*, explaining that "it appears that the trial court's instructions set forth a 'but-for' test that Price sought. Further, the record reveals that the trial court's instructions, taken in their entirety, fairly and correctly state the law applicable to the evidence presented at trial." 2019-Ohio-1642, 135 N.E.3d 1093, ¶ 43. However, the court of appeals determined that the trial court had erred in failing to merge the two convictions for corrupting another with drugs as allied offenses of similar import. It therefore remanded the matter to the trial court for resentencing.

{¶ 16} The court of appeals, sua sponte, certified that its judgment in this case conflicts with the judgment of the Fifth District Court of Appeals in *State v. Kosto*, 5th Dist. Licking No. 17 CA 54, 2018-Ohio-1925.

{¶ 17} In *Kosto*, the Fifth District held that there was insufficient evidence that the accused committed involuntary manslaughter or corrupted another with drugs, because the state had failed to prove that selling the victim heroin was the but-for cause of harm to the victim. *Id.* at ¶ 24, 29. In that case, the state's expert testified that the victim had died from the combined effects of cocaine and heroin, and he was not able to say that heroin use was the sole cause of death. *Id.* at ¶ 21. And because there was insufficient evidence of causation, the court of appeals concluded that the defendant's argument regarding the jury instruction on causation was moot. *Id.* at ¶ 30.

{¶ 18} We determined that a conflict existed and directed the parties to brief the following issue: "Whether the 'but-for causality' rationale of *Burrage v. United States*, 571 U.S. 204, 134 S.Ct. 881, 187 L.Ed.2d 715 (2014), applies to the 'cause

serious physical harm to [another]' element of R.C. 2925.02(A)(3)." 157 Ohio St.3d 1417, 2019-Ohio-3797, 131 N.E.3d 952.

{¶ 19} However, upon further review, we conclude that no conflict exists. We recognize that the Eighth District expressed disagreement with the Fifth District's reasoning in *Kosto*, stating that the Fifth District " 'failed to consider whether the heroin that Kosto provided the victim was a substantial or contributing factor to the victim's death or serious physical harm and whether the resulting harm was foreseeable.' " 2019-Ohio-1642, 135 N.E.3d 1093, at ¶ 41, quoting *State v. Carpenter*, 2019-Ohio-58, 128 N.E.3d 857, ¶ 54 (3d Dist.). But that statement is dicta given the differing circumstances of the two cases. The Eighth District here held that the trial court had not abused its discretion in instructing the jury, because "it appears that the trial court's instructions set forth a 'but-for' test that Price sought." *Id.* at ¶ 43. The Eighth District did not uphold an instruction that causation could be established if the accused's conduct was a substantial or contributing factor to the resulting harm. Accordingly, the judgments of the Fifth and Eighth Districts do not conflict on the same question, and we dismiss the certified-conflict case as improvidently certified. *See* Article IV, Section 3(B)(4), Ohio Constitution; S.Ct.Prac.R. 8.04.

{¶ 20} We also accepted Price's discretionary appeal on the following proposition of law:

> The jury must be instructed that a distributor of drugs is only responsible for causing death to the user of those drugs when the evidence proves that the ingestion of the drugs provided by the distributor was an independent cause of death and that, but for the ingestion of those drugs, the user would not have died.

*See* 157 Ohio St.3d 1418, 2019-Ohio-3797, 131 N.E.3d 961.

{¶ 21} Price maintains that the trial court's instructions were deficient because they did not require the jury to find both that his actions were the but-for cause of serious physical harm to Dawson and that his actions were independently sufficient to cause that harm. He asserts that by instructing the jury that the existence of another cause of that harm is not a defense, the trial court essentially permitted the jury to find him guilty if it determined that his actions were only a substantial or contributing factor in bringing about that harm.

**Law and Analysis**

*Jury Instructions*

{¶ 22} As we explained in *State v. White*, "[a] trial court has broad discretion to decide how to fashion jury instructions, but it must 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.' " 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, quoting *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Although "[w]e require a jury instruction to present a correct, pertinent statement of the law that is appropriate to the facts," *id.*, we have recognized that "there is a limit, and '[n]o purpose is served, for instance, by requiring courts to present redundant jury instructions or instructions that are so similar to other instructions to be presented as to be confusing,' " *id.*, quoting *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, 24 N.E.3d 1147, ¶ 5.

*Burrage v. United States*

{¶ 23} In *Burrage*, 571 U.S. 204, 134 S.Ct. 881, 187 L.Ed.2d 715, the United States Supreme Court construed a federal sentencing-enhancement statute, 21 U.S.C. 841(b)(1)(C), that imposes a 20-year mandatory-minimum sentence on an offender who unlawfully distributes a Schedule I or II drug, when "death or serious bodily injury results from the use of such substance." The victim in that case had died following an extended drug binge that included using heroin that

Marcus Burrage had sold him. The government charged Burrage with distributing heroin and sought to prove that the victim's " 'death * * * resulted from the use of th[at] substance.' " *Burrage* at 207, quoting the indictment. However, expert witnesses testified at Burrage's trial that although the victim's use of heroin contributed to his death, they could not say that the victim would have lived if had he not taken the heroin. *Id.*

{¶ 24} The Supreme Court explained that the ordinary meaning of the phrase "results from" imposes a requirement of actual causality: that but for the defendant's conduct, the harm would not have occurred. *Id.* at 210-211, 212. It rejected the government's argument that because drug overdoses often involve multiple drugs, the court should apply "an interpretation of 'results from' under which use of a drug distributed by the defendant need not be a but-for cause of death, nor even independently sufficient to cause death, so long as it contributes to an aggregate force (such as mixed-drug intoxication) that is itself a but-for cause of death." *Id.* at 214-215.

{¶ 25} The Supreme Court first distinguished but-for causation from situations "when multiple sufficient causes independently, but concurrently, produce a result." *Id.* at 214. It cited an example in which A fatally stabs B at the same time that X, acting independently, fatally shoots B. In those circumstances, neither A's nor X's action can be considered the but-for cause of B's death—B would have died notwithstanding the fatal stab wound because he was shot at the same time and vice versa. *Id.* at 215. But the Supreme Court did not need to apply such a rule, "since there was no evidence here that [the victim's] heroin use was an independently sufficient cause of his death. No expert was prepared to say that [the victim] would have died from the heroin use alone. *Id.*

{¶ 26} It then rejected the government's additional argument that the term "results from" could encompass action that "was a 'substantial' or 'contributing' factor in producing a given result." *Id.*, 571 U.S. at 215-216, 134 S.Ct. 881, 187

L.Ed.2d 715. According to this approach advocated by the government, when a contributing factor, standing alone, is not sufficient to bring about the harm, causation is theorized to exist when contributing factors combine to produce the harm. *Id.* Calling this theory "less demanding (but also less well established)," *id.* at 215, the court explained that if Congress had intended the mandatory-minimum sentence to apply when the drug use only contributed to the victim's death, it could have done so, but "[i]t chose instead to use language that imports but-for causality," *id.* at 216.

{¶ 27} Accordingly, the Supreme Court held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Id.* at 218-219.

{¶ 28} That holding is not binding on this court. It interprets the meaning of a specific federal statute, and it does not establish any constitutional rule applicable to the states. For this reason, the Supreme Court's statements regarding the meaning of but-for causation, independently sufficient causes, and contributing factors do not control the outcome today. *See State v. Burnett*, 93 Ohio St.3d 419, 422, 755 N.E.2d 857 (2001) ("the Supremacy Clause binds state courts to decisions of the United States Supreme Court on questions of federal statutory and constitutional law"). *Burrage* is persuasive authority only.

*Instructions on Corrupting Another with Drugs*

{¶ 29} R.C. 2925.02 provides:

(A) "No person shall knowingly do any of the following:

\* \* \*

(3) By any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby *cause*

*serious physical harm to the other person*, or cause the other person to become drug dependent[.]

(Emphasis added.)

{¶ 30} Despite the way he frames his argument, Price did not ask the trial court for an instruction that the word "cause" as used in R.C. 2925.02(A)(3) requires a finding that the accused's conduct was *both* the but-for cause of serious physical harm to the victim *and* an "independently sufficient cause" of that harm. *See* Crim.R. 30(A) ("any party may file written requests that the court instruct the jury on the law as set forth in the requests"). But even if he had, Price's reliance on *Burrage* as requiring that instruction is misplaced. As explained above, the court in *Burrage* distinguished but-for causation from "independently sufficient" causation, conceptualizing them as mutually exclusive theories of causation. *Id.*, 571 U.S. at 215, 218-219, 134 S.Ct. 881, 187 L.Ed.2d 715. There is no but-for cause of harm when independently sufficient causes of that harm coincide.

{¶ 31} Instead, at trial, Price sought an instruction stating: "Where the drug distributed by the Defendant * * * is not an independently sufficient cause of the victim's death or serious bodily injury, a Defendant cannot be responsible unless such use was the but-for cause of death or injury."

{¶ 32} The trial court gave the jury the essence of this instruction, albeit in different language, but Price did not raise any specific objection to the phrasing that the trial court used in giving it. *See State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); Crim.R. 30(A) ("a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection").

{¶ 33} First, the trial court defined "cause" to mean "an act or failure to act which in a natural and continuous sequence directly produces the death of a person,

and without which, it would not have occurred." Its instructions further stated that "[c]onduct is the cause of a result if it is an event, but for which the result in question would not have occurred." These instructions informed the jury that it could not convict Price of corrupting another with drugs unless it found that Price's conduct was the but-for cause of Dawson's death.

{¶ 34} The trial court also gave an instruction regarding "independently sufficient causes" when it instructed the jury that "[t]here may be one or more causes of an event, however, if a Defendant's act or failure to act was one cause, then the existence of another cause is not a defense." This instruction still required Price's conduct to be a cause of Dawson's death, and as noted above, cause was defined to mean "an act or failure to act which in a natural and continuous sequence directly produces the death of a person, and without which, it would not have occurred."

{¶ 35} Lastly, Price maintains that the instructions permitted the jury to find him guilty if it found that the drugs Price sold to Dawson through Fort were a substantial or contributing factor to Dawson's death. He asserts that "us[ing] the 'substantial or contributing cause' analysis to determine the 'but-for' cause * * * is exactly the opposite [of the] legal reasoning utilized by the Court in *Burrage*."

{¶ 36} But the Supreme Court in *Burrage* described a contributing factor as one that, standing alone, is not sufficient to bring about the harm. *Id.*, 571 U.S. at 212, 214-216, 134 S.Ct. 881, 187 L.Ed.2d 715. And here, the jury instructions required the jury to find that Price's act directly produced Dawson's death, without which, that death would not have occurred. Therefore, the trial court's instructions did not permit the jury to predicate guilt based on a finding that the drugs Price furnished to Dawson merely contributed to his death.

**Conclusion**

{¶ 37} Price asserts that in the jury instructions on corrupting another with drugs, the jury should have been instructed that his sale of drugs must have been

both the but-for cause of Dawson's death as well as an "independently sufficient cause" of Dawson's death. However, Price did not ask the trial court to give that instruction. Rather, he sought an instruction that the jury was required to find *either* that his conduct was the but-for cause of Dawson's death *or* that it was an independently sufficient cause of Dawson's death. The trial court provided the essence of that instruction. And because the trial court did not instruct the jury that it could convict Price if it found that the drugs he supplied to Dawson were a substantial or contributing cause of Dawson's death, the propriety of such an instruction is not before this court in this case.

{¶ 38} Accordingly, the judgment of the court of appeals is affirmed in case No. 2019-0822, and case No. 2019-0729 is dismissed as improvidently certified.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Katherine E. Mullin, Jeffrey Schnatter, and Patrick Lavelle, Assistant Prosecuting Attorneys, for appellee.

Susan J. Moran, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Diane R. Brey, Deputy Solicitor General, urging affirmance for amicus curiae Attorney General Dave Yost.

Mark A. Stanton, Cuyahoga County Public Defender, and Robert B. McCaleb, Assistant Public Defender, urging reversal for amicus curiae Cuyahoga County Public Defender's Office.

_____