[Cite as *State v. Ellis*, 2025-Ohio-2535.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Kevin W. Popham, J. |
| -vs- | : | |
| | : | |
| JASON M. ELLIS, | : | Case No. 2024 CA 00027 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Fairfield County
Court of Common Pleas, Case No.
2024 CR 00128

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      July 17, 2025

APPEARANCES:

For Plaintiff-Appellee

R. KYLE WITT
Fairfield County Prosecutor

By: CHRISTOPHER A. REAMER
Assistant Prosecutor
239 West Main Street, Suite 1012
Lancaster, Ohio 43130

For Defendant-Appellant

BRIAN A. SMITH
123 Miller Road, Suite 250
Fairlawn, Ohio 44333

*Baldwin, P.J.*

**{¶1}** The appellant appeals the June 20, 2024, conviction and sentence of the Fairfield County Court of Common Pleas. The appellee is the State of Ohio.

<b>STATEMENT OF THE FACTS AND THE CASE</b>

**{¶2}** On March 13, 2024, the appellant was indicted on one count of Domestic Violence in violation of R.C. 2919.25(A) and (D)(3), one count of Strangulation in violation of R.C. 2903.18(B)(3) and (C)(3), and one count of Violating a Protection Order in violation of R.C. 2919.27(A)(2) and (B)(2). The appellee dismissed the charge of Violating a Protection Order prior to trial.

**{¶3}** On May 21, 2024, the matter proceeded to a jury trial.

**{¶4}** At trial, the victim testified that she was previously married to the appellant's brother. The appellant's brother passed away in 2021. The appellant lived with the victim at her and her deceased husband's apartment for about six months. The appellant paid rent when he was employed. The appellant lived with the victim for three months after the appellant's brother passed away.

**{¶5}** After the victim moved from the apartment to live with a friend, she would let the appellant stop by to get something to eat, take a shower, and sometimes sleep when he was homeless.

**{¶6}** The victim continued that on March 6, 2024, the appellant slept over at the victim's new residence. The next morning, the victim saw that her lighters were missing and confronted the appellant about taking them. The appellant got off the couch and came at the victim. He headbutted her in the side of the face. The victim asked what he was doing that for and tried to walk away. The appellant headbutted her again, this time in the

back of the head. The appellant grabbed her purse and attempted to leave her apartment. The appellant pushed the door shut, went to the kitchen, and pulled out a knife. The appellant threatened to cut his own throat and bleed out in her kitchen. The victim screamed not to do that. The appellant put the knife away, approached the victim, and put his hands around her neck. The victim's ride to work then beeped out front, signaling she had arrived.  The victim pulled away and ran down the steps. The victim entered her friend's car. The friend took her to the police station right away. After the victim spoke with the police, she received a text message from the appellant apologizing.

{¶7}　Officer Spiegel testified that dispatch contacted him regarding a potential assault or domestic incident involving the victim. As part of his investigation, Officer Spiegel obtained the text messages the appellant sent to the victim. He apologized for what he did that morning, explaining that he was not himself when he first woke up.

{¶8}　Next, Officer St. Clair testified that dispatch contacted him regarding a situation at the victim's address. He was notified that the appellant was threatening self-harm.

{¶9}　Officer St. Clair went to the victim's apartment to do a welfare check on the appellant. Officer St. Clair knocked on the door and announced their presence. They received no response. Law enforcement sought to obtain keys from the victim or property manager but were unable to unlock the door. They opted to use a battering ram on the door to gain entry.

{¶10}　After breaching the door, the appellant told the police officer to come inside the apartment. The appellant lay down on the floor and placed a cell phone beside him.

The appellant was taken into custody. The appellant told law enforcement that he sent the victim a text message apologizing.

{¶11} The State put into evidence pictures of the victim's injuries, which she accused the appellant of causing.

{¶12} The State then rested.

{¶13} The appellant then testified that his brother was married to the victim before he passed away. He said that the victim woke him up yelling at him and the cat. The victim accused him of stealing lighters. He said he showed her where the lighters were located. The appellant denied headbutting and putting his hands around the neck of the victim. The appellant also denied having a knife during their argument. He claimed to be apologizing for yelling at her. He said that he did not know how she became injured. He told officers that she ran into a door frame on her way out of the apartment.

{¶14} The appellant rested.

{¶15} The jury found the appellant guilty on the count of Domestic Violence in violation of R.C. 2919.25(A) and (D)(3), and not guilty of Strangulation in violation of R.C. 2903.18(B)(3) and (C)(3).

{¶16} On June 20, 2024, the trial court sentenced the appellant to twelve months in prison for his conviction of Domestic Violence.

{¶17} The appellant filed a timely notice of appeal and herein raised the following five assignments of error:

{¶18} "I. APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE, IN CASE NUMBER 2024 CR 00128, WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**{¶19}** "II. THE TRIAL COURT ABUSED ITS DISCRETION IN INSTRUCTING THE JURY ON THE DEFINITION OF 'AFFINITY' UNDER R.C. 2919.25 AS SURVIVING THE DEATH OF THE SPOUSE, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

**{¶20}** "III. APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE, IN CASE NUMBER 2024 CR 00128, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶21}** "IV. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO REQUEST A JURY INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF FIRST-DEGREE MISDEMEANOR ASSAULT, IN CASE NUMBER 2024 CR 00128, CONSTITUTED INEFFECTIVE ASSISTANCCE OF COUNSEL, IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

**{¶22}** "V. THE TRIAL COURT'S IMPOSITTION OF A CONSECUTIVE SENTENCE IN CASE NUMBER 2024 CR 00128, ORDERED TO BE SERVED CONSECUTIVELY TO APPELLANT'S SENTENCE IN CASE NUMBER 2024 CR 00284, WAS NOT SUPPORTED BY THE RECORD."

## I.

**{¶23}** In the appellant's first assignment of error, the appellant argues his conviction was based on insufficient evidence. We disagree.

## STANDARD OF REVIEW

**{¶24}** Sufficiency of the evidence was addressed by the Supreme Court of Ohio in *State v. Worley*, 2021-Ohio-2207:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶219.

*Id*. at ¶57. Thus, a review of the constitutional sufficiency of the evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

## ANALYSIS

**{¶25}** The appellant argues that his conviction on the charge of Domestic Violence was not based upon sufficient evidence. The appellant argues specifically that the State failed to show the victim was related by affinity to the offender.

**{¶26}** R.C. 2919.25 states, in pertinent part:

(A)     No person shall knowingly cause physical harm to a family or household member.

* *

(B)     (F) As used in this section and sections 2919.251 and 2929.26 of the Revised Code:

(1)     "Family or household member" means any of the following:

(a)     Any of the following who is residing or has resided with the offender:

* *

(C)     (ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;

**{¶27}** The General Assembly did not define "affinity" in R.C. 2919.25. Generally, undefined terms are given their plain and ordinary meaning. *Vossman v. AirNet Sys., Inc.*, 2020-Ohio-872, ¶14. However, if words have acquired a particular meaning, we construe them accordingly. R.C. 1.42. Affinity is defined as "[t]he relation that one spouse has to the blood relatives of the other spouse; relationship by marriage." Black's Law Dictionary (12th ed. 2024).

**{¶28}** In the case at bar, it is uncontested that the victim's deceased husband was the brother of the appellant. Therefore, the issue is whether the relationship by affinity

between the victim and the brother of her deceased spouse survives the death of the victim's spouse. While the Supreme Court of Ohio has not decided this issue in the context of R.C. 2919.25, they have spoken to whether a relationship by affinity survives the termination of marriage by the death of a spouse.

{¶29} In *Kest v. Lewis*, 169 Ohio St. 317 (1959), the Supreme Court of Ohio decided the issue of whether a stepson's relationship by affinity to his stepfather survived the death of his biological mother and allowed him to inherit from his stepfather's estate. The Court found that such a relationship did not terminate with the death of his biological mother. The Court stated: "During her lifetime, [the biological mother's] son was her husband's stepson, regardless of the circumstances of his birth, and he continued to be such a stepson after her death." *Id*.

{¶30} We understand the *Kest* case found affinity not to terminate upon the death of a spouse in the context of intestate inheritance, and that our case differs because the term is used in the context of a criminal statute. However, we find *Kest* instructive on how to interpret the plain, ordinary meaning of the term "affinity". Furthermore, the *Kest* case, decided in 1959, predates the effective date of R.C. 2919.25, which went into effect in 2023. The General Assembly had the opportunity to define the term affinity to terminate upon the death of a spouse but chose not do so.

{¶31} At trial, the victim testified that her marriage to the appellant's brother ended with the death of the appellant's brother. She testified she maintained a relationship with the appellant by affording him a place to stay when he needed one. After the victim's husband had passed away, she would allow the appellant to stay at her apartment when he had nowhere else to go. On March 6, 2024, the appellant stayed the evening on her

couch. The next morning, the victim woke the appellant by accusing him of stealing a lighter. The two had an argument over the lighter, and the appellant headbutted the victim multiple times. The appellant also placed his hands on the victim's neck. The victim fled from her apartment. Accordingly, the jury's verdict on the charge of Domestic Violence is supported by sufficient evidence.

**{¶32}** The appellant's first assignment of error is overruled.

## II.

**{¶33}** In the appellant's second assignment of error, the appellant argues that the trial court abused its discretion by instructing the jury that an affinity relationship survives the death of one of the marital partners. We disagree.

## STANDARD OF REVIEW

A trial court has broad discretion to decide how to fashion jury instructions, but it must "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Prince*, 162 Ohio St.3d 609, 2020-Ohio-4926, 166 N.E.3d 1155, ¶22. A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear the jury instructions constituted prejudicial error. *State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041, 2002 WL 727009, ¶4, *citing State v. Adams*, 62 Ohio St.2d 151, 154, 404 N.E.2d 144 (1980). In order to determine whether an erroneous jury instruction was prejudicial, a reviewing court must examine the jury instructions as a whole. *State v. Van Gundy*, 64 Ohio St.3d 230, 233-234, 594 N.E.2d 604 (1992). Pursuant to

Crim. R. 52(A), "[a]ny error defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

*State v. Lazzerini*, 2021-Ohio-1998, ¶92.

## ANALYSIS

{¶34} The appellant argues the jury instruction prejudiced him as the trial court instructed the jury that a relationship by affinity does not terminate with the death of a spouse without citing statutory or case law.

{¶35} As explained in the first assignment of error, we find that a relationship by affinity does not terminate on the death of a spouse. Therefore, the death of the appellant's brother did not terminate the appellant's relationship with the victim as contemplated in R.C. 2919.25. Accordingly, the appellant has failed to show how he was prejudiced by the trial court's jury instruction.

{¶36} The appellant's second assignment of error is overruled.

## III.

{¶37} In the appellant's third assignment of error, the appellant argues his conviction is against the manifest weight of the evidence. We disagree.

## STANDARD OF REVIEW

{¶38} Manifest weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, (1997). The court stated:

Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the

evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics but depends on its *effect in inducing belief.* (Emphasis added.) Black's, *supra*, at 1594.

*Id*. at 387. The Court stated further:

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.")

*Id*.

{¶39} Further, the Court in *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77 (1984), quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978), stated:

(A)  "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

(B)  "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Id*. at 80, fn.3.

### ANALYSIS

**{¶40}** The appellant argues that his conviction for Domestic Violence is against the manifest weight of the evidence because the victim was not a credible witness, as she left key details of how the incident originated out of her written statement to police. We disagree.

**{¶41}** At trial, the victim testified that on March 7, 2024, the victim woke the appellant, who had slept on the victim's couch. The victim accused the appellant of taking her lighters. The appellant became agitated, headbutted the victim multiple times, and put his hands around the victim's neck. The appellant sent a text message to the victim apologizing. The victim provided more details of the event during her testimony than she did in her written statement to police.

**{¶42}** The appellant testified on his own behalf. He stated that they did get into an argument over the cigarette lighters. However, he did not put his hands on her or headbutt her. He claimed her injuries came from her running into a door frame. He explained his

apology as apologizing for arguing about the lighters after she was nice enough to let him sleep on her couch.

**{¶43}** We have thoroughly reviewed the entire record, weighed the evidence and all reasonable inferences, considered the credibility of the witnesses, and have determined that in resolving conflicts in the evidence, the jury did not lose its way and create such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. As noted above, the appellant relies on his testimony and the victim's lack of details regarding how the argument started in her written statement to the police to attempt to undermine the credibility of the victim. The jury, however, was not required to believe the appellant's version of events. *State v. Mendoza*, 2017-Ohio-8977 (10th Dist.). A verdict is not against the manifest weight of the evidence because the jury chose to believe the State's witnesses and version of events rather than the defense witnesses and theory of events. *State v. Andrews*, 2010-Ohio-6126, ¶28 (9th Dist.). Accordingly, we find that the jury's verdict on the charge of domestic violence is not against the manifest weight of the evidence.

**{¶44}** The appellant's third assignment of error is overruled.

## IV.

**{¶45}** In the appellant's fourth assignment of error, the appellant argues that his trial counsel was ineffective for not requesting a jury instruction for a lesser included offense. We disagree.

### STANDARD OF REVIEW

**{¶46}** The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d

674 (1984), and was discussed by this court in *Mansfield v. Studer*, 2012-Ohio-4840 (5th Dist.):

> A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, [113 S.Ct. 838]; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶47}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both prongs of *Strickland* and *Bradley*. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009).

**{¶48}** To show deficient performance, the appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland* at 668. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland* at 687. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial process. *Strickland* at 688.

**{¶49}** Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not

to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id*.

In light of the "variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689, 104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689, 104 S.Ct. at 2064.

*Studer, supra*, at ¶¶58-61. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45 (1980).

**{¶50}** To demonstrate prejudicial ineffective assistance of counsel, the appellant must show a "reasonable probability that but for counsel's errors, the result of the trial would have been different." *Strickland* at 687-688. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**{¶51}** Thus, in order to prevail on an ineffective assistance of counsel argument the appellant must show both: 1) that his trial counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of an essential duty to the appellant; and 2) that the appellant was prejudiced by such the alleged ineffectiveness.

## ANALYSIS

**{¶52}** The appellant argues that trial counsel was ineffective for failing to request instructions on a lesser-included offense. However, the failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45 (1980); *State v. Hardman*, 2024-Ohio-300 (5th Dist.). As trial tactics and strategies do not constitute ineffective assistance of counsel, the appellant has failed to show that his trial counsel's performance fell below an objective standard of reasonable representation.

**{¶53}** The appellant's fourth assignment of error is overruled.

## V.

**{¶54}** In the appellant's fifth assignment of error, the appellant argues the trial court's imposition of consecutive sentences was not supported by the record. We disagree.

## STANDARD OF REVIEW

**{¶55}** The Supreme Court of Ohio clarified the standard of review courts of appeal are to use in the review of consecutive sentences as follows:

> (A)     The language of R.C. 2953.08(G)(2) mandates that an appellate court may increase, reduce, or otherwise modify consecutive

sentences only if the record does not "clearly and convincingly" support the trial court's R.C. 2929.14(C)(4) consecutive-sentence findings. The clear-and-convincing standard for appellate review in R.c. 2953.08(G)(2) is written in the negative.

This Court has defined "clear and convincing evidence" as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

Therefore, an appellate court is directed that it must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences. The statutory language does not require that the appellate court have a firm belief or conviction that the record supports the findings. The language is plain and unambiguous and expresses the General Assembly's intent that appellate courts employ a deferential standard to the trial court's consecutive-sentence findings R.C. 2953.08(G)(2) also ensures that an appellate court does not simply substitute its judgment for that of a trial court.

*State v. Gwynne*, 2023-Ohio-3851, ¶¶13-15.

# ANALYSIS

{¶56}  The appellant argues that the record did not demonstrate that the trial court erred in imposing consecutive sentences in this case and an unrelated case, 2024 CR 0284. We note no notice of appeal was filed in case 2024 CR 0284, and we do not have the full record for that case.

{¶57}  "In Ohio, there is a statutory presumption in favor of concurrent sentence for most felony sentences." *State v. Corbett*, 2023-Ohio-556, ¶27 (5th Dist.). However, the sentencing court may require a convicted offender of multiple offenses to service the prison terms consecutively to one another if the court makes certain findings.

{¶58}  R.C. 2929.14(C)(4) provides:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a)    The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b)    At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the

multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)    The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶59}** Thus, the trial court must find that consecutive sentences are necessary to protect the public from future crimes and to punish the offender. In addition, the court must find that consecutive sentences are not disproportionate to the offender's conduct and the danger the offender poses to the public. Finally, the court must make at least one of these three additional findings: (1) the offender committed one or more offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under post-release control for a prior offense, (2) at least two of the multiple offenses were committed as part of one or more courses of conduct; or (3) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *See, State v. White*, 2013-Ohio-2058, ¶36.

**{¶60}** "In order to impose consecutive terms of imprisonment, a trial court is required to make findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 2014-Ohio-3177, syllabus. In other words, the sentencing court does not have to perform "a word-for-word recitation of the language of the statute." *Id*. at ¶29. Therefore, "as long as the reviewing court can discern that the trial

court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id*. The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id*. at ¶37.

**{¶61}** In the case sub judice, the trial court made the appropriate findings. In addition, the record shows the appellant had a lengthy criminal history, he headbutted the victim, and put his hands around her neck. In the unrelated case, the appellant entered a plea of guilty to Aggravated Possession of Drugs, a felony. Again, the unrelated case is not in front of this Court in this matter, and we do not have the full record of the case.

**{¶62}** Upon review of the sentencing transcript, we are not "left with a firm belief or conviction that the findings are not supported by the evidence," and the appellant's fifth assignment of error is overruled.

## CONCLUSION

**{¶63}** Based upon the foregoing, the judgment of the Fairfield County Court of Common Pleas is hereby affirmed.

By: Baldwin, P.J.

Hoffman, J. and

Popham, J. concur.